for two minutes for rebuttal, if I may. Yes, you may. Thank you. Your Honors, this case is actually very, very simple. I was thinking last night and this morning what to do this morning. We believe that the record as it stands right now, uncontradicted in all key parts, compels Lafleur Frye Relief. Why do I say that? We have to go back, initially, to when the first two lawyers appeared from New York to represent Mr. Torres-Estrada. From that very early step in the case, the government knew that these lawyers had a serious conflict. Whether you want to call it potential conflict, whether you want to call it actual conflict, it doesn't matter what label you put on it, the government knew from the outset that these lawyers were conflicted. So why didn't they do anything? We suggest, Your Honors, that that has to do with expediency, that has to do with a... Could you explain, please, for me the nature of the conflict? And I'm not going to accept your assumption that there's no difference between a potential conflict and an actual conflict. It seems to me it makes a difference. But as I understand the case, they met with their client who was a fugitive and the conflict is that they didn't tell him to turn himself in? No, Your Honor, and I understand your question perfectly. And there is a difference between a potential and an actual. This is what the conflict in this case is. The other, as we noted in our briefs everywhere, the other person that these lawyers met with besides Mr. Torres-Estrada was the principal government witness for sentencing purposes and for trial purposes in this case. So what is the actual conflict? These lawyers knew from the outset, in their minds, as the government pointed out in that famous email, that this was potentially going to be a very hotly contested case. From the very outset, the U.S. Attorney's Office knew that this other person that these lawyers met with and Mr. Torres-Estrada supposedly had agreed not to cooperate against each other. The government knew that the principal government witness agreed to cooperate against Mr. Torres-Estrada. And that was very early on. The famous Henwood email has that. You don't have to take my word for it or my advocates' arguments. At the time of the meeting of all of the lawyers, the co-defendant had already agreed he was cooperating with the government? I don't believe so. No. I don't know. So what's the issue? The issue is simple. Not at the time that they met, but at the time they were both arrested. If you remember the email from the prosecutor, when that principal government witness, and this witness is a huge witness, Your Honors. It's not your average run-of-the-mill drug snitch. When he was arrested by the authorities, they found the lawyer's business card and his cell number in his pocket. Now, when did that man begin to provide cooperation against Mr. Torres-Estrada? We don't know because all of our Brady requests were never ruled upon, never considered. Why do I throw in Brady? Because all of the issues in this case are interconnected. It is a lattice of issues. You cannot separate one from the other. But if you don't know when the other fugitive began to cooperate with the government, then it seems to me that the conflict can't be any more than potential. Your Honor, you are correct. But we don't know because we were never given a hearing. So what we do with the record is very simply look at what the government said to these lawyers at the eve of sentencing when these two lawyers were still on the case. All we have to do and all the court has to do is look at that email. Because in that email, the prosecutor tells these lawyers, hey guys, you knew you had a problem from the very beginning. He also makes reference, Your Honor, to what representations were made to him, to the prosecutor, by these lawyers. And he tells them, you told me that this was going to be a contested hearing. Now that you have changed it, why are you doing that? Are you doing it so that this information doesn't see the light of day? I'm paraphrasing now. So when did the government know that there was an actual conflict? We suggested to the court that based on that email and the rest of the record, not the email in isolation, this was going on from the very beginning of plea negotiations. That's why the government played it safe. Counsel, how, except in your insistence that there is a potential conflict or perhaps you would say an actual conflict, how did that actual conflict affect the performance of these two attorneys? And I ask that question for two reasons. Number one, when the government points out the irony that you are actually asking as relief in this case, the reinstatement of a plea deal that these two attorneys negotiated for your client. And secondly, it appears to me that the focus of your brief in terms of actual ineffective performance is on Garcia, the local counsel, and not the performance of these two individuals. And so, yes, establishing a conflict is important, but you have to be able to relate that to some deficiency in performance. And I'm struggling to understand what that deficiency in performance is for these two attorneys. I can see that. Thank you for the question. And this is my answer. First, you have an agency relationship between the lawyers that are actually conflicted and their local counsel. They are legally, as you know, one person. The law treats those people, those three separate individuals, as one person. Second, the plea agreement that they started negotiating, this is the attorney from New York, the plea agreement they started negotiating was in flux. And they were trying to get a specific plea agreement, which we outlined completely. Then what happens? Their own local counsel, basically them legally by agency theory and the Sixth Amendment, my God, begins to go ex parte himself to the prosecutor. He's the local Puerto Rico lawyer. So how does that conflict affect the ultimate analysis here? We see it as very simple, because what happened in that camp of three lawyers, which by law is only one, there was an internal conflict between the lawyers that defeated the very plea agreement that they were trying to get. I had understood that your Lafler claim was about the New York lawyers and that the local lawyer, you were making a simple claim of ineffective assistance of counsel. Thank you. He did not have a Lafler situation. No, Your Honor. In our briefs we point out, especially with Attorney Raymond Granger's declaration, that was never contradicted, that is the local lawyer who stepped in and injected the Lafler-Frey issue. How? Because he came in and started talking to the client by himself, giving him highly unrealistic advice, wild ideas about extremely low sentences. How does that inject a Lafler issue? It's just like Lafler, and this is how it does. The lawyer begins to tell the client, basically reject this plea agreement that the government is offering. And I'm not talking about a plea agreement that was negotiated, Judge Lipitz. I'm talking about the plea agreement that was offered by the government. So what this local lawyer does, he begins to defeat the very offer by the government, which was very favorable. How? By telling this client, don't worry about this, I can get you less. This plea agreement is ridiculous, I'm paraphrasing. The government doesn't have enough evidence to support that sentence against you. That's just like Lafler. The facts are identical to Lafler. Then what does the client do? He listens to the local lawyer. He fires his New York lawyers. The declaration on file says that this man told him to fire his New York lawyers. So he listens to that lawyer, and then what happens? The new charges are brought. But that seems to go back to Judge Lopez's point. He fires the New York lawyers who purportedly have a potential or actual conflict of interest. Correct. They are not the ones who negotiate the deal for him. Well, they were negotiating the deal, as you saw in the declaration. Yes, but then they drop out of the scene. They don't drop out of the scene. The declaration under oath that has never been rejected is that they were fired because the local counsel told the client to fire the out-of-town lawyers. But you can use a label like Lafler. But Lafler isn't itself a constitutional doctrine. Lafler is a species of ineffective assistance of counsel. That is correct. All right. So your claim is that counsel, collectively and individually, were ineffective. And that claim, as I understand it, is centered on the fact that they didn't counsel the defendant to accept the plea deal that the government originally offered. Yes, sir. Perfectly put. Excuse me. So why, if that is so, if that's an ineffective assistance of counsel claim focused in that fashion, why isn't that claim wiped out for purposes of direct review by the waiver of appeal provision in the plea agreement? Thank you. Because, number one, there is no waiver of appeal. There is none? No. Let me tell you why there isn't. Excuse me. There is no clause in the plea agreement that says waiver of appeal? I'm going to read it to you right now, sir. Go ahead. This is from the appendix 0314. It's the plea agreement, and it is page 10 with ACF. Paragraph 17 states the following. Waiver of appeal. The defendant hereby agrees that if this honorable court accepts this agreement and sentences her, typo, according to its terms and conditions, the defendant waives and surrenders her right to appeal the conviction and sentence. There is no IAC waiver like other cases. I'm sorry. That's usually thought to include an IAC waiver. I understand. I understand that. Go ahead. And, furthermore, you failed to inform the court of this issue, much less make the argument you're now making in your initial brief. I'm not even certain this argument was made in your reply brief. No, our argument So, pardon me. Sure. Just bear with us. Sure. Assume that there is a waiver of appeal and that this court will enforce it. Okay? Make that assumption. I know you don't want to, but I understand. What is left of your case, then? Is there anything left that you would be free to present in a 2255 proceeding? Yes, there is. And what is that? The ineffective assistance of counsel. Of which counsel? All of them. All three because there was one unit acting in conjunction. They should have gone to the court and had Mr. Torres' try to see who his lawyer was. But let me get to the waiver back. No. You need to keep talking to me about why you think the waiver of appeal has not taken care of the ineffective assistance claims. Because the very And let's draw a distinction between a conflict of interest claim and an ordinary ineffective assistance claim. Yes, Your Honor. Let's go on the ineffective assistance alone because that is the waiver issue. We maintain, like every other case in this court's very case that we quoted in our brief, that even if the court accepts the government's argument there could be a waiver here. Even if that is the case, then you have a relief. You have the right to consider that, just like in the cases we cited to the court, and go on a plain justice relief issue. You're talking about the miscarriage of justice exception under Teeter. Absolutely. And that's clearly applicable. All right. But if we don't think the miscarriage of justice is applicable, then the waiver on Judge Lynch's hypothetical or hypothesis covers the ineffective assistance of counsel for purposes of direct review. It may not preclude a 2255. That's an issue that's not before us. I would not concede that point, but I can see the courts looking at that. We maintain that just like the district court noted very loudly, and the government did not object at the time. But the district court didn't make a ruling. At sentencing, it's not the district court's purview to interpret the waiver of appeal. That's for this court. I understand. And the miscarriage of justice would then apply, Your Honor. That is our argument. Okay. Assuming it doesn't apply, assuming we enforce the waiver of appeal, I ask you to draw a distinction between an ineffective assistance claim and a conflict of interest claim. They are two separate issues. The ineffective assistance goes directly to whether that advice to basically reject the plea agreement was ineffective, like in Lafleur. The conflict of interest, Your Honors, is actually supportive of that. It's in the background to show the government's manner in which they handled this entire case. We maintain that from the very beginning, when the prosecutor was faced with a division, an internal division between the lawyers, he should have gone to the court immediately and said, Your Honor, I want to know who speaks for this client. That's the duty of the government. On top of that, the government knew there was a conflict of interest. They had a duty to tell the district court, Your Honor, by the way, these two lawyers have a conflict of interest. So it is not the principal thrust of this appeal, Your Honor, the conflict of interest. It's background about what the government should have done. What do you mean it's background? I mean, arguably, there is a species of conflict of interest claim where you can demonstrate a national conflict, where a demonstration of prejudice is not necessary. Are you truly a demonstration of prejudice is necessary for a garden variety and effective assistance of counsel claim? Are you making a distinct conflict of interest claim on the basis of an actual conflict where no demonstration of prejudice is necessary? Are you making such a claim? No, we're not. We're doing a potential conflict of interest in that this is not a garden variety type of issue. But we don't have the facts to actually argue an actual conflict of interest. If it had been a contested hearing, even the government said it would be an actual conflict of interest because this witness would have been called to testify. Okay. And I believe, I hope I still have two minutes. Yes, you do. Thank you. May it please the Court, Thomas Compton on behalf of the United States. It's the government's position that in this conflict of interest claim, where does he show the deficiency? He doesn't. He's actually trying to step back, say it relates to a plea agreement where, or plea offer, which in this case that the government, the defense counsel is no longer there. Why are you arguing the merits after we've just had a lengthy discussion of the waiver of appeal? I would have thought you would have started there. Well, in this case, because the Court had appeared to address it, I think the waiver of appeal does apply in this case. And what does it cover? I think it covers everything. The scope of the conflict of interest and the, in this case, ineffective assistance of counsel claim. However, Do you have any authority for the proposition that a waiver of appeal wipes out a conflict of interest claim? In this case, you have to look at it because this is No, I'm not talking about in this case. Listen to my question. Do you have any authority for the legal proposition that a waiver of appeal clause wipes out a conflict of interest claim? Well, as you know, a waiver of appeals can waive constitutional type issues if it wants. Yeah, but that doesn't answer my question. No, I do not. Yeah, you don't have any authority. No, I do not. And I suggest that because no court's ever held that, it can certainly wipe out ineffective assistance of counsel claims if it's properly brought. If it was properly, in this case, they failed to address it. This case, this defendant failed to raise it. And that's the first thing the government presented. He doesn't raise it on appeals or royal blots. Where was, you know, why didn't he raise it? He knew about it. It was clear from the record and everything else. So it's the government's contention. That defendant waived both those claims. Now, as for the deficiency in this case, he didn't show counsel, actually Granger and Cepona in this case, had actually worked ineffectively during the plea negotiation process or even afterwards. Now, the government, in this case, in abundance of caution, presented to the court the issue of a potential conflict because when it came for sentencing, it doesn't relate to when they change a plea or anything else. It only relates to when it came for sentencing. And in this case, what happened? Granger and Cepona withdrew, and they were no longer there and represented by counsel here present in the court. So where can you show there was any deficient performance or anything else? How was he affected? There is none. As for the issue of ineffectiveness of Garcia, in this case it's the government's position that there was an intervening change. Now, it isn't like Loeffler. Loeffler, in that case, their plea agreement was rejected and everything else. In this case, if you look at the moment, the government's motion actually states it that there, when they were in the process of negotiating, it was around that time when the government developed additional evidence and stopped plea negotiations. What do you expect? The government cannot leave it open. If they have another case pending, they stop negotiating with them. So based on that, you cannot blame and claim Garcia was ineffective. You've lost me, Mr. Klobuchar. Yes. I thought you said to Judge Lange at the start of your remarks when she questioned this that the government's position was that the Waiver of Appeal Clause wipes out, for purposes of direct review, shelters, any ineffective assistance. Now you're spending your time and ours arguing the merits of the ineffective assistance claim. And it budded some caution, Your Honor. Well, it will go to your miscarriage of justice argument. Exactly, Your Honor, in this case. Now, with regard to the final issue that he raises, and I guess the court, whether the conflict, the court should have recused itself. In this case, it's the government's position that the court properly did not recuse itself. The court could have looked at the facts. It knew about the case. In this case, there was only one conversation, ex parte. And actually, if you look, counsel had made an indication that the defense counsel, O'Griger was his name, had not contacted the AUSA afterwards, which is incorrect. If you look at Attachment 7, O'Griger did contact the government to explain that he had contacted the court and that the court was in agreement to continue the change of plea in this one case. And that was the whole sole purpose of the one-time ex parte communications. And it was for scheduling purposes. Any other questions, Your Honor? Yes. Just one. Yes. Appellant spends a fair bit of time focusing both on the brief, and it was alluded to here, to the email from Assistant U.S. Attorney Henwood, I believe it is. Correct. In which he tells Mr. Granger and Mr. Cipone that they have information about this meeting that's been described where Granger and Cipone are meeting with Mr. Torres and a co-defendant. And other people, yes. And other people, potentially. At a time when the two defendants are fugitives from justice, the government has reason to believe that the attorneys did not counsel them to turn themselves in. It's characterized as a somewhat threatening email suggesting some misbehavior on the part of counsel and perhaps a conflict of interest. And a further point is made that the government at that point had an obligation to advise the court that Mr. Torres may be represented by counsel who are in a conflicted position. Do you accept the proposition that the government was indicating to counsel that there was an awareness of a possible conflict of interest? And if so, did the government have an obligation to advise the court that Mr. Torres was represented by conflicted counsel? Well, in this case, if you look at it, the government was advising him that there was a potential conflict arising because he was no longer contesting at sentencing some issues. And that's where the government got concerned. If you read that email, that was what they're concerned about. I don't understand. Well, because before there was really no issues, the conflict, he was adequately concerned. I still don't understand. Is the conflict that they didn't tell him to turn himself in? In this case, I think it was the meeting, my understanding, to tell him not to cooperate or anything else. I still don't understand. So counsel for some defendants meets with counsel for a co-defendant at a time when they are fugitives and there is no cooperation by the co-defendant with the government. Correct. Or at least there's no evidence and it would seem to defy logic that they would meet. So what is Mr. Henwood talking about? Well, what he was concerned about was if this co-operator was specifying, the issue of the meeting would have arisen where the counsels had, in this case, talked about not cooperating. And here, because of the counsels were there present at the meeting, it would infer that in this case, here the guy, they assumed it was a conflict. That's why I don't understand. And counsel even says, the Granger and counsel said there is no conflict. He finds no conflict. That's what they're relating in their emails. So it's not clear what the conflict was, Your Honor. Well, Mr. Henwood may have been a bit heavy-handed in that email. I agree with you on that one, Your Honor. Even when I read it, too, I was like, what was this email about? So, but it's my understanding they were just concerned in abundance of caution to send an email explaining that, in this case, we have a co-operator, this co-operator had been at a meeting, in abundance of caution we're just advising you there could be a potential conflict. No, it's more than an abundance of caution. It's very heavy-handed, and it's intended to accomplish something. I'm not certain Mr. Henwood was accurate that there was a potential conflict at that point, but it's an issue that I don't think is before us. Yes, Your Honor. Any other questions? This is a factual matter. They withdrew the next day, did they not? Several days later, they filed a sentencing memorandum. If you look at the emails that were back and forth between actually local counsel and that, yes, they withdrew a couple of days later after filing a sentencing memorandum. Right. And that then goes to Judge Lopez's point about how they have removed themselves from the proceeding before there is the plea agreement. Before actually sentencing, Your Honor, yes. That's true. So there was no conflict at sentencing at the time. Any other questions? Thank you. Permission to withdraw. I'll be very brief. The real conflict here that Henwood, a very experienced prosecutor, was raising was that the lawyers had potential criminal liability. For what? Because they're sitting there. The implication by these prosecutors, you're meeting with multiple co-defendants in the same conspiracy. You're meeting with them to basically tell them and agree that they're not going to cooperate. And then later, you represent one in court and the other one is going to be a witness. That is a classic situation that any criminal defense lawyer would be very cautious. But here's the issue. Mr. Torres is not seeking to withdraw his guilty plea, Your Honor. He's not seeking to attack the sentence. He's injecting, he's arguing, a Lafleur-Frey issue. And the bottom line here, what did Garcia inject in here? By the time he was fired, the Lafleur-Frey damage had been done. We also maintain that he was the agent of Granger and Sapone from the very beginning, and that is the sabotage of the government's favorable offer. It has nothing to do with the negotiation ability of the lawyers. It has everything to do with the government's offer, which was very favorable. What Granger and Sapone should have done was gone to the district court and fired their local counsel. They did not do that. You know, it's something when a defendant engages, knowingly engages, three different lawyers to expect the government to go to the court and say, you have to disrupt the choice of the defendant as to who represents him. I just don't think that that's a duty on the part of the government, and it would cause some constitutional problems of interference with the defense. Exactly. Except that that's exactly what the government did with its email. All right. Thank you.